**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| BRITT MILLER AND BRET GOULD ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) | Case No.  4:14-cv-708 |
| Plaintiff(s), | ) ) ) | <u>CLASS ACTION COMPLAINT</u> |
| v. | ) ) ) | |
| GLOBAL GEOPHYSICAL SERVICES, INC., RICHARD A. DEGNER, P. MATHEW VERGHESE, RICHARD C. WHITE, and JESSE PEREZ, III, DAMIR SKERL, MICHAEL C. FORREST, GEORGE E. MATELICH, STANLEY DE JONGH OSBORNE, KARL F. KURZ, MIACHEL S. BABORICH, JOSEPH P. MCCOY, MLV & CO., and NATIONAL SECURITIES CORPORATION | ) ) ) ) ) ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

Plaintiffs Britt Miller and Bret Gould, ("Plaintiffs") individually and on behalf of all other persons similarly situated, by plaintiffs' undersigned attorneys, for plaintiffs' complaint, allege upon the investigation made by and through their counsel, which included public filings made by Global Geophysical Services, Inc. ("Global" or the "Company") with the Securities and Exchange Commission (the "SEC"), as well as press releases, news articles, analyst reports, court filings, and media reports concerning the Company.  This complaint is based upon plaintiffs' personal knowledge as to plaintiffs' own acts, and upon information and belief as to all other matters, except where indicated otherwise.

**NATURE OF ACTION**

1.      This is a securities class action that Plaintiffs bring on behalf of two classes:

a.      A class of investors who bought Global common stock during the period beginning on April 21, 2010 through March 18, 2014 (the "Class Period" and the "Open Market Class") bringing claims under the Securities and Exchange Act of 1934 (the "Exchange Act"); and

b.      A class of investors who bought Global Series A preferred stock in or traceable to, Global's December 3, 2013 registration statement (the "Registration Statement") for an underwritten offering (the "Offering" and the "Offering Class"), bringing claims under the Securities Act of 1933 (the "Securities Act").

**JURISDICTION AND VENUE**

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78b-1 and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5, and pursuant to Sections 11 and 15 of the Securities Act, 15 U.S.C.  §§ 77k and 77(o). Section 22 of the Securities Act provides for jurisdiction over Securities Act claims in this Court.

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and Section 22(a) of the Securities Act, 15 U.S.C. §77v(a).

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) and Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a).   Defendants maintain their principal executive offices in this District and many of the acts, practices and transactions complained of herein occurred in substantial part in this District.

5.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff Brit Miller purchased Global common stock during the Class Period and was damaged thereby.  His PSLRA certification is attached hereto.

7.      Plaintiff Bret Gould purchased Global Series A preferred stock traceable to the Registration Statement. His PSLRA certification is attached hereto.

8.      Defendant Global is a Texas Corporation with its principal place of business in Missouri City, Texas. Global and its subsidiaries purport to provide an integrated suite of seismic data solutions to the oil and gas industry worldwide. The company's seismic data solutions primarily include seismic data acquisition, microseismic monitoring, data processing, and interpretation services, which deliver data that enables the creation of high resolution images of the Earth's subsurface, and reveal complex structural and stratigraphic details.   The Company is listed on NYSE currently trades under ticker "GGS". GGS's Series A preferred stock is also listed on the NYSE, and trades under ticker "GGS-PA".

9.      Defendant P. Mathew Verghese is the Company's Executive Vice President and Chief Operating Officer.  Prior to January 2014, he served as the Company's Senior Vice President and Chief Financial Officer of the Company. Defendant Verghese also signed the Registration Statement.

10.      Defendant Richard A. Degner founded the Company in June 2003. He served as President and Chief Executive Officer until October 25, 2012.

11.      Defendant  Richard  C.  White  is  the  President  and  Chief  Executive  Officer  of  the

Company, and is Chairman of the Board of Directors.  He was appointed President and CEO in October 2012 and was elected Chairman of the Board of Directors in January 2013. Defendant White also signed the Registration Statement.

12.     Defendant Jesse Perez, III was the Chief Accounting Officer of the Company between July 7, 2011 and February 2013.

13.     Collectively, Berghes, Degner, White, and Perez are the "Individual Open Market Defendants".

14.     Defendant Damir Skerl was a director of Global at the time of the Offering, and signed the Registration Statement.

15.     Defendant Michael C. Forrest was a director of Global at the time of the Offering, and signed the Registration Statement.

16.     Defendant George E. Matelich was a director of Global at the time of the Offering, and signed the Registration Statement.

17.     Defendant Stanley de Jongh Osborne was a director of Global at the time of the Offering, and signed the Registration Statement.

18.     Defendant Karl F. Kurz was a director of Global at the time of the Offering, and signed the Registration Statement.

19.     Defendant Michael S. Bahorich was a director of Global at the time of the Offering, and signed the Registration Statement.

20.     Defendant Joseph P. McCoy was a director of Global at the time of the Offering, and signed the Registration Statement.

21.     Collectively, Verghese, White, Skerl, Forrest, Matelich, Osborne, Kurz, Bahorich, and McCoy are the "Individual Offering Defendants."

22.     Collectively, the Individual Offering Defendants and the Individual Open Market Defendants are the Individual Defendants.

23.     Defendant MLV & Co. ("MLV") is a financial services firm, concentrating on investment banking.

24.     Defendant National Securities Corporation ("National Securities") is an investment banking and financial advisory firm.. MLV and National Securities are the "Underwriters." MLV and National Securities were the Joint Book-Running Managers and Underwriters of Global's December 13, 2013 Offering.

25.     By virtue of their positions at Global, the Individual Defendants had access to the adverse and undisclosed information about Global's business conditions and financial results. The Individual Defendants directly participated in the management of Global, were directly involved in the operations of Global at the highest levels, were privy to information concerning he undisclosed business conditions and financial results of Global and were involved in the dissemination of the materially false and misleading statements and information alleged herein.

26.     By reason of their positions as executive officers and/or directors of Global, the Individual Defendants were at all relevant times controlling persons within the meaning of Section 20 of the Exchange Act and Section 15 of the Securities Act.  Because of their executive and directorial positions with Global, the Individual Defendants had access to the adverse and undisclosed information about Global's business conditions and financial results. Further, as particularized herein, the Individual Defendants were able to and did control the contents of various reports and public statements regarding Global. Any acts attributed to Global were caused and/or influenced by the Individual Defendants by virtue of their controlling-person positions at Global.

27.     As the senior officers and/or directors of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the Exchange Act, traded on the NYSE, and governed by the provisions of the federal securities laws, the Individual Defendants have a duty to promptly disseminate accurate and truthful information about the undisclosed and material business conditions of Global, so that the market price of Global's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations. By virtue of their positions of control and authority at Global, the Individual Defendants had the power to and did control the content of the various public statements concerning Global, its business conditions and financial results during the Class Period and indeed made many of the challenged statements described herein. Accordingly, the Individual Defendants were responsible for the accuracy of the public statements and releases detailed herein and are primarily liable for the misrepresentations contained therein.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

28.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all those who purchased or otherwise acquired the common stock of Global during the Class Period and who suffered damages (the "Open Market Class"), or who acquired the Series A preferred stock of Global (the "Offering Class").  Excluded from the Classes are defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which defendants have or had a controlling interest.

29.     The members of the Classes are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiffs at this time

and can only be ascertained through appropriate discovery, plaintiffs believe that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Classes may be identified from records maintained by Global or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30.     Plaintiffs' claims are typical of the claims of the members of the Classes as Mr. Miller purchased Global stock during the Class Period and Mr. Gould purchased Global stock traceable to the Registration Statement and all members of the Classes are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

31.     Plaintiffs will fairly and adequately protect the interests of the members of the Classes and have retained counsel competent and experienced in class and securities litigation.

32.     Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes. Among the questions of law and fact common to the Classes are:

     a.   whether the federal securities laws were violated by defendants' acts as alleged herein;

     b.   whether defendants misrepresented material facts and omitted to state material facts necessary to prevent the statements made to the investing public from being misleading during the Class Period or in the Registration Statements concerning its financial statements;

     c.   whether defendants acted knowingly or recklessly in making materially misleading representations or omitting to state material facts during the Class

Period;

    d.   whether the market prices of the Company's common stock was artificially inflated or distorted during the Class Period because of defendants' conduct complained of herein; and

    e.   whether the members of the Classes have sustained damages and the proper measure of such damages.

33.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## DEFENDANTS' MISCONDUCT

34.    During the Class Period, Global issued and filed materially false and misleading financial statements with the SEC.

35.    On April 21 and 22, 2010, respectively, Global filed with the SEC a registration and prospectus to sell 11,500,000 of its shares for a total price of $90,000,000. The registration statement was signed by Degner and Verghese. Both the registration statement and prospectus contained Global's 2009 annual financial statements, which were false and misleading for the reasons set out in ¶43, below.

36.    On March 18, 2011, the Company filed its Form 10-K for the fiscal year ended December 31, 2010.  The Form 10-K was signed by Degner as CEO and P. Matthew Verghese as CFO and Senior Vice President of the Company. The Form 10-K included Global's 2009 and

2010 financial statements, which were false and misleading for the reasons set out in ¶43, below.

37.     On February 22, 2012, the Company filed its Form 10-K for the fiscal year ended December 31, 2011. The Form 10-K was signed by Degner as CEO and P. Matthew Verghese as CFO and Senior Vice President of the Company. The Form 10-K included Global's 2010 and 2011 financial statements, which were false and misleading for the reasons set out in ¶43, below.

38.     On March 5, 2013, the Company filed its Form 10-K for the fiscal year ended December 31, 2012.  The Form 10-K was signed by White and Verghese as CFO and Senior Vice President of the Company. The Form 10-K included Global's 2011 and 2012 financial statements, which were false and misleading for the reasons set out in ¶43, below.

39.     On May 3, 2013, the Company filed its Form 10-Q for the quarter ended March 31, 2013.  The Form 10-Q was signed by White and Verghese. The Form 10-Q included Global's Q1 2013 financial statements, which were false and misleading for the reasons set out in ¶43, below.

40.     On August 13, 2013, the Company filed its Form 10-Q for the quarter ended June 30, 2013.  The Form 10-Q was signed by White and Verghese. The Form 10-Q included Global's Q2 2013 financial statements, which were false and misleading for the reasons set out in ¶43, below.

41.     On November 12, 2013, the Company filed its Form 10-Q for the quarter ended September 30, 2013. The Form 10-Q was signed by White and Verghese. The Form 10-Q included Global's Q2 2013 financial statements, which were false and misleading for the reasons set out in ¶43, below.

42.     On December 3, 2013 and December 9, 2013, respectively, Global filed a registration statement (the "Registration Statement") and prospectus to sell $8,000,021 of its

preferred stock in an underwritten offering (the "Offering") underwritten by MLV and National Securities. Each unit entitled the purchaser to a 1/1000th interest in Global's Series A preferred stock, each of which had the following material terms:

     a.   Liquidation preference of $25,000;

     b.   Holder entitled to 11.5% annual dividend;

     c.   Not redeemable until December 13, 2018.

43.    The Offering closed on December 13, 2013. The Registration Statement was signed by each Individual Offering Defendant. The Registration Statement incorporated by reference the 2012 Form 10-K, and the Q1-Q3 2013 Forms 10-Q.

44.    All of the above financial statements were false and misleading, were false and misleading. On March 17, 2014, after close of trading, the Company published a press release which provided in relevant part:

## Global Geophysical Services, Inc. Reports Preliminary Unaudited Summary of Fourth Quarter and Full Year 2013 Financial Results

### Announces Restatement of Certain Financial Results and Delay in Filing of Form 10-K

### Company Retains Financial Advisors to Assist in Reviewing Financial and Strategic Alternatives for Addressing Liquidity Needs

HOUSTON, March 17, 2014 (GLOBE NEWSWIRE) -- Global Geophysical Services, Inc. ("Global" or the "Company") (NYSE:GGS) today announced preliminary unaudited financial results for the fourth quarter and full year ended December 31, 2013.

**[...]**

**Restatement and Delay in Filing of Form 10-K**

Global also announced that, upon the recommendation of management and after consultation with its independent registered public accounting firm, UHY LLP, the Company's Audit Committee and Board of Directors have concluded that the Company's financial statements and related auditors' reports for each of the fiscal years ended December 31, 2012, 2011, 2010, and 2009 and the first, second and third quarters of 2013 should no longer be relied upon because of accounting errors resulting from material weaknesses in the Company's internal controls. The Company, along with its advisors and its independent auditor, is conducting a thorough review of these statements, and intends to restate its consolidated financial statements from 2011 onward as well as selected financial data for the 2009 and 2010 fiscal years in its 2013 Annual Report. In light of the restatements, the Company is unable to file its 2013 Annual Report on Form 10-K at this time. In addition, in connection with the restatements, management has concluded that certain material weaknesses exist in the Company's internal controls and intends to begin promptly to develop a plan to remediate the material weaknesses. Additional information relating to the restatements and the material weaknesses will be disclosed in the Company's Current Report on Form 8-K to be filed shortly with the Securities and Exchange Commission (SEC).

The aggregate effect of the restatements on revenues for the years ended December 31, 2012 and 2011 based on preliminary unaudited information are estimated to be an increase of $4.7 million and a decrease of $4.8 million, respectively, as compared to the amounts previously reported for those periods. The aggregate effect of the restatements on income from operations before income tax for the years ended December 31, 2012 and 2011 based on preliminary, unaudited information are estimated to be an increase in income from operations before tax of $2.0 million and a decrease of $5.0 million, respectively, as compared to the amounts previously reported for those periods.

The aggregate effect of the restatements on revenues for the three-months ended March 31, June 30, and September 30, 2013 based on preliminary, unaudited information are estimated to be an increase of $0.4 million, a decrease of $0.7 million and a decrease of $5.0 million, respectively, as compared to the amounts previously reported for those periods. The aggregate effect of the restatements on the loss from operations before tax for the three-months ended March 31, June 30, and September 30, 2013 based on preliminary, unaudited information are estimated to be a decrease of $0.4 million, a decrease of $0.6 million and an increase of $0.6 million.

45. On March 18, 2014, the Company filed a Form 8-K with the SEC, which provided in relevant part:

**Item 4.02. Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**

On March 17, 2014, the Audit Committee of the Board of Directors (the "**Audit Committee**") of the Company, on the recommendation of management, and after consultation with our independent registered public accounting firm, UHY LLP, concluded that our audited consolidated financial statements and related consolidated financial information for each of the fiscal years ended December 31, 2012, 2011, 2010, and 2009 and the related reports of our independent registered public accounting firm thereon, and the unaudited condensed consolidated financial statements for each of the quarters in the year ended December 31, 2012 and the quarters ended March 31, 2013, June 30, 2013, and September 31, 2013 (collectively, the "**Restated Periods**") should no longer be relied upon because of accounting errors.

We intend to present our restated consolidated financial statements and related consolidated financial information in our Annual Report on Form 10-K for the year ended December 31, 2013 (the "**2013 Form 10-K**"), including (i) restated consolidated financial statements for the years ended December 31, 2012 and 2011, and (ii) the impact of the restatement on quarterly financial data for each of the quarters in the year ended December 31, 2012 and the quarters ended March 31, 2013, June 30, 2013, and September 31, 2013. We also intend to include in the 2013 Form 10-K restated selected financial data for the years ended 2010 and 2009. In light of the restatements, we are unable to timely file the 2013 Form 10-K.

The accounting errors to be addressed in the restatements relate primarily to the following issues:

1. misapplication of a method of revenue recognition for certain contracts in the Latin America region, resulting in misallocation of revenues and costs between periods;
2. research and development costs that were inappropriately capitalized rather than expensed;
3. unrecorded sales and use tax liabilities;
4. unrecorded gains associated with insurance proceeds received in excess of the net book value of the insured assets during the third quarter of 2013; and
5. unrecorded stock-based compensation expense associated with performance units granted during the third quarter of 2013.

The aggregate effect of the restatements on revenues for the years ended December 31, 2012 and 2011 based on preliminary unaudited information are estimated to be an increase of $4.7 million and a decrease of $4.8 million,

respectively, as compared to the amounts previously reported for those periods. The aggregate effect of the restatements on income from operations before income tax for the years ended December 31, 2012 and 2011 based on preliminary, unaudited information are estimated to be an increase in income from operations before tax of $2.0 million and a decrease of $5.0 million, respectively, as compared to the amounts previously reported for those periods.

The aggregate effect of the restatements on revenues for the three-months ended March 31, June 30, and September 30, 2013 based on preliminary, unaudited information are estimated to be an increase of $0.4 million, a decrease of $0.7 million and a decrease of $5.0 million, respectively, as compared to the amounts previously reported for those periods. The aggregate effect of the restatements on the loss from operations before tax for the three-months ended March 31, June 30, and September 30, 2013 based on preliminary, unaudited information are estimated to be a decrease of $0.4 million, a decrease of $0.6 million and an increase of $0.6 million.

Management has also evaluated the effects of the facts leading to the restatement on our conclusions regarding the adequacy of our internal control over financial reporting and disclosure controls and procedures as of December 31, 2013, and continues to evaluate such effects on our conclusions regarding the adequacy of our internal control over financial reporting and disclosure controls and procedures as of the end of each of the other Restated Periods.

Based on that evaluation, management has concluded that the various accounting issues noted above resulted from certain material weaknesses in our internal controls pertaining to the entity level control environment. As a result of the material weaknesses, we have concluded that our internal control over financial reporting and our disclosure controls and procedures were ineffective as of December 31, 2013. A final conclusion with respect to the effectiveness of our internal control over financial reporting and disclosure controls and procedures as of the end of each of the Restated Periods other than the year ended December 31, 2013 has not been made, and management is currently working to determine whether any material weakness in such controls and procedures was present during each of such periods. We will amend any disclosures pertaining to our evaluation of such controls and procedures as appropriate in connection with filing the 2013 Form 10-K.

Management, with the oversight of the audit committee, intends to begin promptly to develop a plan to remediate the material weaknesses. The description of the material weakness in internal controls identified by management and our preliminary remediation plans and changes to internal control over financial reporting will be disclosed in item 9A of the 2013 Form 10-K.

The Audit Committee and management have discussed the matters disclosed in this Item 4.02 with UHY LLP, our independent registered public accounting firm.

46.     The March 17 and 18 announcement shocked the market.  Global's stock's trading price fell from a close of $1.17 on March 17 to $0.46 on March 18, a decline of $0.71, or 61%, damaging investors. That same day, the trading price of Global's preferred stock fell from $16.95 to $4.06, or 76%, damaging investors.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

## FRAUD-ON-THE-MARKET DOCTRINE

47.     Plaintiffs will rely upon the presumption of reliance established by the fraud on the market doctrine in that, among other things:

    a.   Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    b.   The omissions and misrepresentations were material;

    c.    The Company's stock traded in an efficient market;

    d.    The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's stock; and

    e.   Plaintiffs and other members of the Open Market Class purchased Global common stock between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

48.      At all relevant times, the market for Global common stock was efficient for the following reasons, among others:

    a.   As a regulated issuer, Global filed periodic public reports with the SEC;

    b.   Global's stock was listed on the NYSE, creating a presumption that its stock trades on an efficient market;

    c.   Global regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services;

    d.   Several million shares of Global shares were traded on a weekly basis, demonstrating a strong presumption of an efficient market;

    e.   Global was eligible to file a short-form registration statements with the SEC on Form S-3 and did so on December 3, 2013;

    f.   Global was followed by numerous analysts that issued reports about it;

    g.   New company specific information was rapidly reflected in Global's stock price.

    h.   A designated market maker made a market in Global's stock.

## NO SAFE HARBOR

49.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. The specific misrepresentations of defendants pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the

particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Global who knew that those statements were false when made.

## COUNT I

### Violation Of Section 10(b) Of The Exchange Act

### And Rule 10b-5 Promulgated Thereunder

### Against Global, Verghese, Degner, and White

50.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

51.     This claim is brought on behalf of all persons who bought Global stock at artificially inflated prices, and suffered damages as a result, against Defendants Global, Verghese, Degner, and White.

52.     Throughout the Class Period, defendants, individually and in concert, directly or indirectly, engaged in a common plan, scheme and course of conduct described herein, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and a course of business which operated as a fraud upon plaintiff and the other members of the Class; made various false statements of material facts and omitted to state material facts to make the statements made not misleading to plaintiff and the other members of the Class; and employed manipulative or deceptive devices and contrivances in connection with the purchase and sale of Global common stock.

53.     The purpose and effect of defendants' plan, scheme and course of conduct was to artificially inflate and maintain the price of Global's common stock.

54.     Defendants, who are the top officers of the Company, had actual knowledge of

the material omissions and/or the falsity of the material statements set forth above, and intended to deceive plaintiffs and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Global personnel to members of the investing public, including Plaintiff and the Class, and the securities analysts.

55.     As a result of the foregoing, the market price of Global's securities was artificially inflated during the Class Period. In ignorance of the falsity of the defendants' statements plaintiff and the other members of the Class relied, to their damage, on the statements described above and/or the integrity of the market price of Global securities during the Class Period in purchasing Global common stock at prices which were artificially inflated as a result of defendants' false and misleading statements.

56.     Had plaintiffs and the other members of the Class known of the material adverse information which defendants did not disclose, they would not have purchased Global common stock at the artificially inflated prices that they did.

57.     By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

58.     As a direct and proximate result of defendants' wrongful conduct, plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

59.     This action is being brought within two years after the discovery of the untrue statements and omissions and within five years after their issuance.

## COUNT II

### Violation Of Section 20(a) Of The Exchange Act

### Against The Individual Open Market Defendants

60.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

61.     This second claim under §20(a) of the Exchange Act is alleged against the Individual Open Market Defendants, only, based on the primary violation of §10b and Rule 10b-5 by Global.

62.     The Individual Open Market Defendants acted as controlling persons of Global within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false and misleading information disseminated to the investing public, these defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading.   These defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

63.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged

herein, and exercised the same,

64.     As set forth above, Global violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons of Global, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

65.     As a direct and proximate result of defendants' wrongful conduct, plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

66.     This action is being brought within two years after the discovery of the untrue statements and omissions and within five years after their issuance.

## COUNT III

### Violation Of Section 11 Of The Securities Act

### Against Global, the Underwriters, and the Individual Offering Defendants

67.     Plaintiff repeats and realleges each and every allegation contained above.  This Count is asserted by Mr. Gould on behalf of the Offering Class against Global, the Underwriters, and the Individual Offering Defendants.

68.     This count is predicated upon these Defendants' strict liability for making false statements of material fact in the Registration Statement and Prospectus (collectively "Offering Materials").

69.     The Company, the Individual Offering Defendants, and the Underwriters were sellers, offerors, and/or solicitors of the purchasers of the common stock offered pursuant to Offering Materials.  These defendants issued or caused to be issued the Offering Materials in connection with the Offering.

70.     The Offering Materials contained untrue statements of material fact.  These Defendants' actions included soliciting Plaintiff and the Class by means of these Defendants' participation in the preparation of the false Offering Materials.

71.     Global is the registrant for the Offering.  The Individual Offering Defendants are responsible for the contents of the Registration Statement based upon their status as directors of the Company or because they signed or authorized the signing of the Registration Statement on their behalf pursuant to Sections 11(a)(1)-(3) of the Securities Act. The Underwriters are responsible for the contents of the Registration Statement pursuant to Section 11(a)(5) of the Securities Act.

72.     These Defendants were obligated to make a reasonable and diligent investigation of the statements contained in the Offering Materials to ensure that such statements were true and that there were no material omissions of facts required to be stated therein in order to make the statements contained therein not misleading.  None of these Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Materials were accurate and complete in all material respects.

73.     Plaintiff and the other members of the Class did not know, nor could they have known, of the untruths or omissions contained in the Offering Materials.

74.     This claim is brought within one year after discovery of the untrue statements and omissions in the Offering Materials and within three years of the effective date of the Offering Materials.

75.     By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages from the Defendants and each of them, jointly and severally.

## COUNT IV

### Violations Of Section 15 Of The Securities Act

### Against Individual Offering Defendants

76.     Plaintiff repeats and re-alleges each and every allegation contained above.

77.     This count is asserted by Plaintiff Gould on behalf of the Offering Class against the Individual Offering Defendants, each of whom was a control person of Global at the time of the Offering.

78.     For the reasons set forth above in the Third Count, Global is liable to Plaintiff and the members of the Offering Class who purchased Global preferred shares in the Offering based on the untrue statements of material fact contained in the Registration Statement and Prospectus, pursuant to Section 11 of the Securities Act, and were damaged thereby.

79.     The Individual Offering Defendants were control persons of Global by virtue of, among other things, their power and influence and exercised the same to cause Global to engage in the acts described herein; their positions as senior officers of the Company; their day-to-day control of Global's business affairs; their responsibility or control over the contents of the Registration Statement and Prospectus; and/or their control over the inaccurate statements of material fact contained in the Registration Statement and Prospectus.

80.     None of the Individual Offering Defendants made reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and Prospectus were accurate and complete in all material respects.  Had they exercised reasonable care, they could have known of the material misstatements alleged herein.

81.     This claim was brought within one year after the discovery of the untrue statements and omissions in the Registration Statement and Prospectus and within three years

after Global preferred shares was sold to the Class in connection with the Offering.

82.    By reason of the misconduct alleged herein for which Global is primarily liable, as set forth above, the Individual Offering Defendants are jointly and severally liable with and to the same extent as Global pursuant to Section 15 of the Securities Act.

**WHEREFORE**, plaintiffs pray for relief and judgment, as follows:

(A)    Determining that this action is a proper class action, certifying plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

(B)    Awarding compensatory damages in favor of plaintiffs and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(C)    Awarding plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(D)    Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: March 20, 2014                **PAYNE MITCHELL LAW GROUP, LLP**

*/s/ R. Dean Gresham*
R. Dean Gresham, Esq.
Texas Bar No. 24027215
S.D. of Texas Bar No. 27438
2911 Turtle Creek Blvd., Suite 1400
Dallas, TX 75219
Tel: (214) 252-1888
Fax: (214) 252-1889
Email: dean@paynemithcell.com

-And-

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (not admitted)
Laurence M. Rosen, Esq. (not admitted)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

COUNSEL FOR PLAINTIFFS