**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| **BRETT MILLER AND BRET GOULD,** | § | |
| **on Behalf of Themselves and All Others** | § | |
| **Similarly Situated,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. H-14-0708** |
| | § | |
| **GLOBAL GEOPHYSICAL SERVICES,** | § | |
| **INC.,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |


**MOTION TO DISMISS ALL CLAIMS IN THE AMENDED COMPLAINT
AGAINST DEFENDANT RICHARD A. DEGNER
AND MEMORANDUM OF LAW IN SUPPORT**

BAKER & HOSTETLER LLP

Marc D. Powers
Jessie M. Gabriel
45 Rockefeller Plaza, 14th Floor
New York, NY 10022
Telephone: (212) 589-4200
Fax: (212) 589-4201

and

Dean D. Hunt
Marie L. Carlisle
81 Main Street, Suite 1100
Houston, TX 77002
Telephone: (713) 751-1600
Fax: (713) 751-1717
*Attorneys for Defendant Richard A. Degner*

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ........................................................................1

II.     STATEMENT OF FACTS ............................................................................3

III.    STANDARD OF REVIEW ...........................................................................5

IV.     ARGUMENT ............................................................................................7

    A.   Plaintiffs' Section 10(b) Claim Against Degner Fails Because Plaintiffs Have Not Pleaded with Specificity that Degner Made Any Misstatements ...........8

       1.   Working Capital and Cash Flow ................................................8

       2.   Net Income ..............................................................................10

       3.   Internal Controls .....................................................................11

    B.   Plaintiffs' Section 10(b) Claim Against Degner Fails Because Plaintiffs Have Not Pleaded that the Alleged Misrepresentations Were "Material" ............12

    C.   Plaintiffs' Section 10(b) Claim Against Degner Fails for the Additional Reason that Plaintiffs Have Not Pleaded that Degner Made Any Misstatements with Scienter ...........13

       1.   The Amended Complaint Does Not Contain Any Specific Allegations that Degner Acted with Knowledge or Recklessness ................................14

       2.   Misrepresentations Made in Reliance on a Third Party—Here, GGS's Auditor—Cannot Serve as the Basis for a Section 10(b) Claim................16

    D.   Plaintiffs' Claim Based on Alleged Misstatements Regarding Capital Requirements Fails Because They Fall Within the Safe Harbor for Forward-Looking Statements and/or the Bespeaks Caution Doctrine..................17

    E.   Plaintiffs' Section 20(a) Claim Against Degner Fails Because There Is No Underlying Violation ............................................................................19

V.      CONCLUSION...........................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Arbitrage Pls. Grp. v. Tchuruk,*
  291 F.3d 336 (5th Cir. 2002) ........................................................11, 12

*Abrams v. Baker Hughes Inc.,*
  292 F.3d 424 (5th Cir. 2002) ........................................................ *passim*

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)........................................................5, 6

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
  493 F.3d 87 (2d Cir. 2007)........................................................6

*In re Baker Hughes Sec. Litig.,*
  136 F. Supp. 2d 630 (S.D. Tex. 2001) ........................................ *passim*

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)........................................................5

*In re Browning-Ferris,*
  876 F. Supp. ........................................................19

*In re Browning-Ferris Indus. Inc. Sec. Litig.,*
  876 F.Supp. 870 (S.D. Tex. 1995) ........................................18

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.,*
  497 F.3d 546 (5th Cir. 2007) ........................................16

*In re Cirrus Logic Sec. Litig.,*
  946 F. Supp. 1446 (N.D. Cal. 1996) ........................................17

*In re Criimi Mae, Inc. Sec. Litig.,*
  94 F. Supp. 2d 652 (D. Md. 2000) ........................................15

*Cuvillier v. Taylor,*
  503 F.3d 397 (5th Cir. 2007) ........................................5

*Dennis v. Gen. Imaging, Inc.,*
  918 F.2d 496 (5th Cir. 1990) ........................................20

*Ernst & Ernst v. Hochfelder,*
  425 U.S. 185 (1976)........................................................13

*Fin. Acquisition Partners LP v. Blackwell,*
  440 F.3d 278 (5th Cir. 2006) ........................................7, 8

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Goldstein v. MCI WorldCom*,
  340 F.3d 238 (5th Cir. 2003) ................................................ 11

*Guidry v. Bank of La Place*,
  740 F. Supp. 1208, 1216 (E.D. La. 1990) ................................. 6

*Hill v. Gonzani*
  638 F.3d 40 (1st Cir. 2011) ........................................ 10

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc*,
  537 F.3d 527 (5th Cir. 2008) ................................. 11, 13, 14, 16

*Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*,
  387 F. Supp. 2d 691 (S.D. Tex. 2004) .................................. 16

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191 (5th Cir. 2009) .............................................. 5

*Krim v. BancTexas Grp., Inc.*,
  989 F.2d 1435 (5th Cir. 1993) ........................................... 12

*Lormand v. Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ............................................ 18

*Lovelace v. Software Spectrum Inc.*,
  78 F.3d 1015 (5th Cir. 1996) ......................................... 2, 19

*Melder v. Morris*,
  27 F.3d 1097 (5th Cir. 1994) ............................................ 15

*Mortensen v. AmeriCredit Corp.*,
  123 F. Supp. 2d 1018 (N.D. Tex. 2000) ............................... 15

*Nathenson v. Zonagen Inc.*,
  267 F.3d 400 (5th Cir. 2001) ..................................... *passim*

*Payne v. Deluca*,
  433 F. Supp. 2d 547 (W.D. Pa. 2006) ................................... 9

*Pipefitters Local No. 636 Defined Ben. Plan v. Zale Corp.*,
  499 Fed. App'x 345 (5th Cir. 2012) .................................... 17

*Plumbers & Pipefitters Local Union No. 719 Pension Trust Fund v. Conseco Inc.*,
  09 Civ. 6966(JGK), 2011 WL 1198712 (S.D.N.Y. Mar. 30, 2011) ........... 10, 13

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*R&W Technical Servs. Ltd. v. Commodity Futures Trading Comm'n*,
205 F.3d 165 (5th Cir. 2000) ..................................................................12

*In re REMEC Inc. Sec. Litig.*,
702 F. Supp. 2d 1202 (S.D. Cal. 2010)...................................................17

*Rubinstein v.Collins*,
20 F.3d 160 (1994)..............................................................................18, 19

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Co.*,
75 F.3d 801 (2d Cir. 1996)......................................................................15

*Shushany v. Allwaste, Inc.*,
992 F.2d 517 (5th Cir. 1993) .........................................................5, 6, 8, 9

*Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*,
365 F.3d 353 (5th Cir. 2004) ...................................................7, 17, 18, 19

*In re Taleo Corp. Sec. Litig.*,
No. C 09-00151 JSW, 2010 WL 597987 (N.D. Cal. Feb. 17, 2010)......13

*Tuchman v. DSC Commc'ns Corp.*,
14 F.3d 1061 (5th Cir. 1994) .....................................................................6

*In re Wet Seal, Inc. Sec. Litig.*,
518 F. Supp. 2d 1148 (C.D. Cal. 2007) ..................................................15

*Williams v. WMX Techs., Inc.*,
112 F.3d 175 (5th Cir. 1997) .....................................................................6

**Statutes**

17 C.F.R. § 240.10b-5.........................................................................1, 6, 7

15 U.S.C. § 78j(b) ...............................................................................1, 6

15 U.S.C. § 78t(a) .......................................................................................1

15 U.S.C. § 78u-4 ............................................................................... *passim*

15 U.S.C. § 78u-5 .....................................................................................17

**Rules**

Fed. R. Civ P. 9(b) .............................................................................1, 6, 7

Fed. R. Civ P. 12(b)(6)........................................................................1, 5

Defendant Richard A. Degner ("Degner") moves to dismiss Counts III and IV of Plaintiffs' Consolidated Amended Class Action Complaint, filed February 12, 2015 (the "Amended Complaint") pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs were granted leave to replead their initial consolidated complaint on February 11, 2015.

## I.        PRELIMINARY STATEMENT

This memorandum is respectfully submitted to support the motion to dismiss the two counts of the Amended Complaint pled against Degner, the former CEO of Global Geophysical Services, Inc. ("GGS"). Plaintiffs seek to hold him liable for purported securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, and Section 20(a) of the Exchange Act, the "control person" provisions. The primary bases for the new allegations in the amended pleading remain the same: to reverse-engineer theories of liability arising from GGS's financial restatement publicly announced on March 17, 2014 (the "Restatement"), and GGS's subsequent bankruptcy filing eight days later on March 25, 2014. Plaintiffs allege one concept: that the Restatement filed on April 24, 2014, and the bankruptcy, prove that previous Company filings regarding financial statements and internal controls were intentionally false and misleading when made. This type of *res ipsa loquitur* analysis is woefully insufficient for a securities fraud claim, where Plaintiffs must specifically plead and prove that an intentional fraud has occurred.

Degner in particular does not belong in this lawsuit. He founded GGS in 2003 and resigned as CEO effective October 25, 2012. He only signed <u>one</u> of the Form 10-K for GGS that are alleged to be fraudulent and that was for 2011, *two years* before the Restatement and bankruptcy.

Plaintiffs do not allege a single factual allegation supporting that Degner knew that any of the representations in GGS's prior filings were false or misleading.  The Amended Complaint essentially alleges only that as CEO Degner received financial information and had conversations with his employees—nothing more.  Importantly, many of the allegations supporting the purported wrongdoing occurred in filings and activities in 2013 and 2014, after Degner had left the Company.

In addition, most of the accounting items in the Restatement arose from revised accounting transactions in 2013 or later.  The ones that occurred during Degner's tenure as CEO are immaterial as a matter of law and were certified as accurate by GGS's auditor.

Plaintiffs must plead that Degner made false or misleading statements, on material matters, and that he did so with scienter which caused Plaintiffs a loss.  The Amended Complaint does not meet any of these requirements.  Plaintiffs do not allege with the necessary specificity that the misrepresentations attributed to Degner were ever false or misleading.  Nor that Degner had specific knowledge that they were false or misleading. In addition, certain of the misrepresentations fall within the safe harbor for forward-looking statements and invoke the protection of the bespeaks caution doctrine.  Degner respectfully submits that this Amended Complaint suffers from the same infirmities as the prior one withdrawn by Plaintiffs after Defendants moved to dismiss it.  Accordingly, the Court should dismiss Counts III and IV of the Amended Complaint as they relate to Degner.[1]

---

[1] Degner also adopts herein, solely for purposes of this motion, the legal arguments for dismissal of Counts III and IV set forth in the Individual Defendants' Motion to Dismiss Memorandum of Law, and the exhibits submitted in support thereof, also filed this same date.

## II.     STATEMENT OF FACTS

GGS and its subsidiaries provide an integrated suite of seismic data solutions to the oil and gas industry worldwide.   Oil and gas companies employ seismic surveys to evaluate prospects for potential drilling.  (Am. Compl. ¶ 25.) [2]   GGS was founded by Degner and held it's Initial Public Offering ("IPO") in April 2010.   (Am. Compl. ¶¶ 29, 43.)   GGS has its headquarters in Missouri City, Texas, and its shares traded on the NYSE.   GGS is now a new defendant in this Amended Complaint upon the completion of its bankruptcy to the extent of its available insurance.  (Am. Compl. ¶ 25.)

Degner was the Founder and CEO of GGS until he was forced out on October 25, 2012. (Am. Compl.  ¶ 29.)   After leaving GGS, Degner started another Company, Geophysical Technology, Inc. ("GTI").  (Am. Compl. ¶ 89.)  Degner was obviously not at GGS during its Preferred Stock Offering in January 2014, which is the basis for the first two counts in the Amended Complaint and many of the alleged misrepresentations.

Defendant Matthew Verghese joined GGS in March 2009 as its Senior Vice President and Chief Financial Officer.  He became GGS's Executive Vice President and Chief Operating Officer in January 2014.  He had previously worked at Arthur Anderson, Enron and Lehman Brothers.  (Am. Compl. ¶ 26.)   Many of the allegations in the Amended Complaint are directed at Verghese and/or directed at responsibilities he had at GGS.

Another relevant party for warranting Degner's dismissal is Defendant UHY LLP ("UHY").   UHY is a national audit firm that was GGS's auditor from the time of the IPO through the Restatement.    UHY certified GGS's financial statements and certified that its

---

[2] Citations to "Am. Compl. ¶ __" are to the Consolidated Amended Class Action Complaint, filed on February 12, 2015.  (Dkt. No. 91.) References to "Powers Decl. Ex. __" are to the exhibits attached to the Declaration of Marc D. Powers filed contemporaneously with this motion to dismiss and memorandum of law in support.  The exhibits are SEC filings cited and quoted in the Amended Complaint, which the Court may consider on a motion to dismiss. *See, e.g., Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1038 (5th Cir. 1996).

internal controls were effective as of December 31, 2012, in the last Form 10-K Degner signed. (Am. Compl. ¶¶ 39.)

Plaintiffs rely for their claims of internal controls deficiencies on numerous GGS public filings, as well as certifications that GGS's internal controls over financial reporting were effective.  All of these statements were reviewed and approved by UHY.  (Am. Compl. ¶ 39.) For reasons that are not clear from the Amended Complaint, UHY apparently conducted another review in 2014 that led UHY and GGS to conclude that GGS's previous accounting treatments were incorrect and its internal controls materially deficient.  (Am. Compl. ¶¶ 164-66.)

Plaintiff's Section 10(b) claim is based on the theory that, because in March 2014 GGS restated its earnings and filed for bankruptcy protection, all the Company's preceding filings regarding its finances and internal controls were necessarily false or misleading.  As set forth herein, Degner contends this is both an inappropriate conclusion and that the Amended Complaint provides no specific factual allegations in support.

Further, the Restatement of certain financial information has an immaterial cumulative effect of reducing GGS's revenue by less than 1% and increasing its operating expenses by less than 3%.  Specifically, the numerous accounting errors corrected in the Restatement mostly involve errors that postdated Degner's departure from the Company.  (Powers Decl. Ex. 3 at F-42 to F-46.)  Only unrecorded sales and use tax, R & D costs characterization and revenue recognition issues for certain Latin American contacts occurred on Degner's watch.  (*Id.* at F-42.)  In the aggregate, these adjustments to net income totaled $2.1 million in 2011 and $1.2 million in 2012.  (*Id.* at F-44, F-45.)  This is clearly an immaterial amount for a Company with $384.8 million in revenue and $85.6 million in operating profit in 2011, and $339.4 million in revenue and $76.6 million in operating profit in 2012.  (*Id.* at F-44, F-45.)  GGS's filings provide

4

adjustments broken down by category for only 2011 and later.  However, it is clear that total adjustments to revenue in 2010 were only $284,000—a change of 0.1%.  (Powers Decl. Ex. 1 at F-5; Ex. 3 at 39.)

Indeed, most of Plaintiffs' allegations relate to GGS's filings or actions taken after Degner left.  Only the first of the seven "one-time tricks" alleged in Plaintiffs' new pleading occurred while Degner was there.  The allegations that do relate to Degner arise out of GGS 10-Ks for 2010 and 2011, which Degner signed on behalf of the Company, and which were audited by UHY prior to filing.  (Am. Compl. ¶¶ 39.)  To this day, Degner does not understand why the same accounting firm that for several years had "blessed" GGS's handling of certain accounting treatments was seeking in 2014 a different treatment and Restatement by the Company.  In any event, such earlier assurances by UHY undercut any argument that Degner acted with the requisite scienter.

## III.    STANDARD OF REVIEW

Rule 12(b)(6) demands dismissal of an action where a complaint fails to adequately state a claim upon which relief can be granted.  In evaluating this motion, a court must construe the pleading liberally and accept all of Plaintiffs' factual allegations as true.  *See In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2009); *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993).  To avoid dismissal, Plaintiffs' factual allegations "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

Rule 12(b)(6) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly,* 550 U.S. at 555.  The Supreme Court has since expounded on the *Twombly* standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It is submitted by Degner that the Amended Complaint fares poorly in this rigid analysis.

To state a Section 10(b) claim, Plaintiffs must allege facts showing: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *In re Baker Hughes Sec. Litig.*, 136 F. Supp. 2d 630, 637 (S.D. Tex. 2001), *aff'd*, 292 F.3d 424, 28 (5th Cir. 2002). For a Section 20(a) claim to survive, they must plead: (1) an underlying securities violation by GGS; (2) control by Degner; and (3) that Degner was a culpable participant in any fraud. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007). These requirements have been further heightened by Rule 9(b).

In all averments of fraud or mistake, a plaintiff must state the circumstances constituting fraud or mistake "with particularity." Fed. R. Civ. P. 9(b). A plaintiff "must set forth specific facts that support an inference of fraud." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). In the context of a Section 10(b) claim, Plaintiffs must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). "Rule 9(b) is designed 'to preclude litigants from filing baseless complaints and then attempting to discover unknown wrongs.'" *Shushany,* 992 F.2d at 521 (quoting *Guidry v. Bank of La Place*, 740 F. Supp. 1208, 1216 (E.D. La. 1990), *aff'd as modified*, 954 F.2d 278 (5th Cir. 1992)).

6

The Amended Complaint, Plaintiffs' third attempt to muddle allegations together that purport to rise to fraud, is a prime example of the plaintiffs class action bar latching on to a single modest financial restatement and throwing together a series of prior filings to justify a back mirror view for a securities fraud claim.  The passage of the PSLRA was meant to deter such actions.  That statute reinforced the pleadings requirements of Rule 9(b) for class action securities fraud claims and further raised the standard for pleading scienter.  For the last 20 years, plaintiffs in Rule 10b-5 have been required to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *See Nathenson v. Zonagen Inc.*, 267 F.3d 400, 407 (5th Cir. 2001).  These particularized facts must show, if proven, that Degner knew or recklessly disregarded the falsity of the misrepresentations at issue.  *See Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430 (5th Cir. 2002).  Plaintiffs' third pleading continues to fall far from that mark.

## IV.    ARGUMENT

Even taking all the allegations in the Amended Complaint as true, Plaintiffs have not specified facts showing any of the statements attributed to Degner were in fact false or misleading when they were made.  Plaintiffs have not alleged how these misrepresentations were "material" to a reasonable GGS investor.  Nor have Plaintiffs established Degner's scienter in making the claimed misrepresentations or omissions.  Any one of these arguments would constitute grounds to dismiss all claims against Degner.  *See Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 362 (5th Cir. 2004); *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286–87 (5th Cir. 2006).  In addition, claims based on certain misrepresentations fail because there is no allegation that they caused any harm, or they fall within the safe harbor for forward-looking statements and the bespeaks caution doctrine.  Accordingly, all claims against Degner should be dismissed with prejudice.

7

**A.** **Plaintiffs' Section 10(b) Claim Against Degner Fails Because Plaintiffs Have Not Pleaded with Specificity that Degner Made Any Misstatements**

Under the PSLRA, Plaintiffs are required to plead not only the particulars of the misrepresentations at issue, but also "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1); *Blackwell*, 440 F.3d at 287; *Nathenson*, 267 F.3d at 412. The Amended Complaint must "pin-point[] the particular misleading statement" and identify with detail how the statements are misleading. Conclusory allegations are insufficient as a matter of law. *Nathenson*, 267 F.3d at 419. Plaintiffs have not met their burden as to any of the three categories of "misstatements" they identify.

### 1.   Working Capital and Cash Flow

Plaintiffs have not adequately alleged that Degner made any misrepresentations regarding GGS's working capital and cash flow. GGS's Form 10-K provided the Company's beliefs and expectations of future capital expenditures and cash flows. However, Plaintiffs have not alleged how they are incorrect. Instead, Plaintiffs argue only that GGS regularly made late payments to vendors and that GGS engaged in seven "one-time tricks" that increased liquidity. This alone is not sufficient to state a securities fraud claim. *See Shushany*, 992 F.2d at 521–24.

Plaintiffs allege that the following excerpt from GGS's 2011 Form 10-K, which Degner signed, is a misrepresentation:

> We believe that our current working capital and projected cash flow from operations will be sufficient to meet our capital requirements for our existing operations for the next 12 *months. Although we expect to continue generating positive cash flow from our operations, events beyond our control may affect our financial condition or results of operations. These events include, but are not limited to, a significant drop in prices of oil and natural gas and a corresponding drop in demand for our services.*

(Am. Compl. ¶ 52 (emphasis added).) *Plaintiffs actually quote only the first sentence, omitting the following two sentences that explicitly qualify the first sentence.*

To bolster this claim, Plaintiffs make a series of generalized allegations to prove GGS was cash flow insolvent, including that: "GGS was not able to meet its obligations as they came due"; "GGS would push off paying vendors as long as they could"; "GGS would scramble to find money to pay the accounts payable, whether through collecting on accounts receivable, selling Company assets, taking on additional debt, or selling GGS shares"; GGS received calls from vendors demanding payment; CW 2 had to "cajole the accounts payable employees to pay the invoice[s]"; one of GGS's vendors refused to provide services until it was paid; and GGS obtained financing from sources outside the United States. (Am. Compl. ¶¶ 3–7, 55–81.) So what? While the Amended Complaint contains more detail regarding these allegations, the substance of the allegations has not changed. (Am. Compl. ¶¶ 55–81.) Slow payments to vendors and outstanding invoices do not alone suggest that GGS's statements regarding cash flow and working capital were inaccurate. In fact, slow payments of cash to vendors actually increase the Company's cash asset and accounts payable liability, for a net neutral financial effect on the balance sheet.

Next, Plaintiffs purportedly identify seven "one-time tricks" that GGS used "to resolve its liquidity deficiencies." (Am. Compl. ¶ 7.) While Plaintiffs are trying to show that GGS was illiquid, these allegations show the opposite—that GGS was regularly able to obtain financing from various sources, sources that were still willing to lend to GGS even while Plaintiffs allege it was in the throes of a liquidity crisis. (*See* Am. Compl. ¶¶ 83–114.) In addition, only one of the seven even relate to Degner, as the remaining six all took place after he resigned. Even taking these allegations as true, they show that GGS was in fact able to obtain $50 million in financing in March 2012, and that was done over Degner's objection. (Am. Compl. ¶¶ 83–84.) They do not demonstrate that any statements by GGS or Degner concerning the Company's cash flow and

9

working capital were false or misleading. Internal disagreements of this kind among management do not require public disclosure. *Hill v. Gonzani,* 638 F.3d 40, 57-58 (1st Cir. 2011).

Further, Plaintiffs do not make any attempt to explain how these facts lead one to invariably conclude that GGS did not believe it could meet its capital requirements, or that GGS did not expect its operations to generate positive cash flow during the following year. (Am. Compl. ¶ 52.) In addition, it is undisputed that GGS did disclose its indebtedness and the risks associated with that indebtedness in its public filings. (*See* Powers. Decl. Ex. 2 at 22, 31.) The Fifth Circuit has previously rejected the kind of non-specific, conclusory allegations pled here. *See, e.g. Shushany,*992 F.2d at 521–24; *Nathenson*, 267 F.3d at 419; *see also Payne v. Deluca*, 433 F. Supp. 2d 547, 592–93 (W.D. Pa. 2006).

2.   <u>Net Income</u>

Plaintiffs also argue that Defendants made misrepresentations regarding net income in GGS's financial statements. (Am. Compl. ¶¶ 118–33.) However, their only evidence is that GGS restated this financial information as a result of later-identified accounting errors. (Am. Compl. ¶ 133) As a matter of law, financial restatements are not alone sufficient to support a securities fraud claim. *See Abrams*, 292 F.3d at 432.

GGS announced the Restatement as a result of uncovering five categories of accounting errors that occurred between 2009 and 2013. (Am. Compl. ¶¶ 131, 165.) The previous financial statements signed by Degner were the Form 10-Ks for 2010 and 2011. (Powers Decl. Exs. 1, 2.) Degner left GGS prior to the filing of the 2012 Form 10-K. (Am. Compl. ¶ 29.) On this basis alone, Plaintiffs allege that the previous financial statements from the Company were materially false and misleading. (Am. Compl. ¶ 133.) But this is not enough—financial restatements do not alone prove that a previous financial statement was false or misleading. *See Abrams*, 292

10

F.3d at 432; *Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc,* 537 F.3d 527, 534

n.3 (5th Cir. 2008); *Goldstein v. MCI WorldCom,* 340 F.3d 238, 253–54 (5th Cir. 2003).

        3.    <u>Internal Controls</u>

Plaintiffs also allege that GGS misrepresented the effectiveness of its internal controls in

2012.  (Am. Compl. ¶¶ 134–67.)  The sole basis for this allegation is that GGS determined, in

2014, that GGS's internal controls were not effective.  However, that finding relates to controls

deficiencies in *2013,* when Degner was no longer the CEO.  (Am. Compl. ¶ 29, 164–66.)  This is

not sufficient to meet Plaintiffs' pleading burden against Degner.  *See Abrams*, 292 F.3d at 431–

32.

Plaintiffs further argue that these statements were false based on the following: GGS had

to restate its earnings for 2012 (Am. Compl. ¶ 163–67); GGS decided in 2013 to hire an internal

audit director and to create an audit department (Am. Compl. ¶ 157); Verghese sent an email in

October 2013 saying that GGS had implemented certain internal controls (Am. Compl. ¶ 158);

and some ambiguous testimony by the CFO who did not join GGS until more than a year after

Degner left the Company (Am. Compl. ¶¶ 160–61).[3]  None of these facts, even if true, would

prove that GGS did not evaluate the effectiveness of its internal controls and did not determine

them to be effective when it filed its 2011 Form 10-K.  At most, these facts suggest that controls

which were in place in 2013 included some material weaknesses.  However, as GGS

acknowledged in its 2013 Form 10-K, "internal control over financial reporting is not intended to

provide absolute assurance that a misstatement of our Consolidated Financial Statements would

be prevented or detected."  (Powers Decl. Ex. 3 at 63.)  In addition, numerous courts have found

---

[3] Plaintiffs attempt to fill the holes in their allegations against Degner by arguing that he hired his family members and "talked down to" his employees.  (Am. Compl. ¶¶ 149–51.)  These allegations, even if true, have no bearing on Plaintiffs' claims.  Hiring your sister and speaking indelicately to your employees are not a securities law violation.

that an ultimate finding of material weaknesses in internal controls does not, in and of itself, support a claim for securities fraud. *See, e.g.*, *Abrams*, 292 F.3d at 431–32; *Plumbers & Pipefitters Local Union No. 719 Pension Trust Fund v. Conseco Inc.*, 09 Civ. 6966(JGK), 2011 WL 1198712, at *22 (S.D.N.Y. Mar. 30, 2011). This failure to allege specific facts demonstrating any statement by Degner was false or misleading alone dictates that Counts III and IV must be dismissed as to Degner.

Thus, the alleged misrepresentations regarding capital requirements, internal controls, and financial statements were not in fact misrepresentations at all. The Amended Complaint attacks a hindsight belief by GGS's new management and UHY that their own analysis of previous years required some minor accounting adjustments. Plaintiffs have failed to plead that Degner made any misrepresentations. As a result, Plaintiffs' claims against Degner must be dismissed. *See Nathenson*, 267 F.3d at 419.

**B.     Plaintiffs' Section 10(b) Claim Against Degner Fails Because Plaintiffs Have Not Pleaded that the Alleged Misrepresentations Were "Material"**

The Amended Complaint fails to allege that any misrepresentation from Degner was "material." Plaintiffs bear the burden of pleading and proving materiality. *ABC Arbitrage*, 291 F.3d at 359. "A statement or omitted fact is 'material' if there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest." *R&W Technical Servs. Ltd. v. Commodity Futures Trading Comm'n*, 205 F.3d 165, 169 (5th Cir. 2000). While materiality is often a mixed question of law and fact, a court may find a statement immaterial as a matter of law under certain circumstances. *See ABC Arbitrage*, 291 F.3d at 359.

The language in the 2012 Form 10-K regarding working capital is immaterial as a matter of law. The Form 10-K provides only the Company's beliefs and expectations regarding capital expenditures and cash flow. (Am. Compl. ¶ 116.) Such "projections of future performance not

12

worded as guarantees are generally not actionable under the federal securities laws." *ABC Arbitrage*, 291 F.3d at 359 (quoting *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1446 (5th Cir. 1993)).

The statements regarding net income are similarly immaterial. Looking at the 2011 Form 10-K, which is the last Form 10-K Degner signed, it should lead this Court to conclude he cannot be held liable for securities fraud. The reported total revenues for 2011 were $385,355,000 versus the restated revenue of $384,809,000. (*Id.* at F-45.) Less than $1 million. The total operating expenses as reported were $295,548,000 versus as restated $299,168,000. (*Id.*) All told for 2011, the EPS went from 15 cents to 13 cents. For the first three quarters of 2012, reported on Form 10-Q, the numbers are similarly small and unremarkable. (*Id.* at F-53 to F-55.) Thus, the impact of the items which comprise the Restatement for the period Degner signed the filings are as a matter of law insufficient to meet Plaintiffs' burden of materiality. *See Abrams*, 292 F.3d at 432; *Conseco Inc.*, 2011 WL 1198712, at *22; *In re Taleo Corp. Sec. Litig.*, No. C 09-00151 JSW, 2010 WL 597987, at *11 (N.D. Cal. Feb. 17, 2010).

### C.   Plaintiffs' Section 10(b) Claim Against Degner Fails for the Additional Reason that Plaintiffs Have Not Pleaded that Degner Made Any Misstatements with Scienter

The Amended Complaint also fails to allege that Degner made any misrepresentation or omission with the requisite mental state. A Section 10(b) claim can stand only against a party that made a misstatement in order to "deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976); *Shaw Grp.*, 537 F.3d at 533. For each allegation that serves as the basis for Plaintiffs' claim, they must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); *see Nathenson*, 267 F.3d at 407. That required scienter is actual knowledge or "severe recklessness," which can only be satisfied by "those highly unreasonable omissions or

13

misrepresentations that involve . . . an extreme departure from the standard of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Abrams*, 292 F.3d at 430.

While circumstantial evidence may support an inference of scienter, allegations that the defendants had motive and opportunity are not alone sufficient. *Shaw Grp.*, 537 F.3d at 533 (dismissing complaint for failure to properly allege scienter). The Amended Complaint does not satisfy this requirement. It does not contain a single meaningful and relevant allegation specific to Degner. This falls far short of alleging the "strong inference of scienter" required by the Fifth Circuit and the PSLRA. *See* 15 U.S.C. § 78u-4(b)(2); *Abrams*, 292 F.3d at 430. For this additional reason, the Section 10(b) claim against Degner must be dismissed.

1.     <u>The Amended Complaint Does Not Contain Any Specific Allegations that<br/>Degner Acted with Knowledge or Recklessness</u>

Plaintiffs allege that Degner "regularly spoke with" GGS's Finance Manager of North America (Am. Compl. ¶ 56), and "received daily cash reports," which contained account balances, accounts payable and receivable, and the previous day's cash inflows and outflows. (Am. Compl. ¶ 62). He was allegedly present at a meeting "in late 2011 or early 2012" where the Board told him that he could raise $50 million through senior notes but that it was "his last chance" (Am. Compl. ¶ 83). These represent the *only* allegations about Degner's knowledge and none of them, even if ultimately proven by Plaintiffs, would be sufficient to show that Degner acted with knowledge or recklessness when he made the statements at issue.

In addition, these allegations mirror allegations this Court rejected in *Baker Hughes*. The plaintiffs in *Baker Hughes* argued the defendants had motive to defraud investors because of their "dire need for capital." 136 F. Supp. 2d at 641. This Court rejected plaintiffs' argument because plaintiffs failed to allege how "the Defendants would personally profit" from raising

14

more capital.  *Id.* at 642; *see also Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994).

Similarly, in this case, Plaintiffs do not make a single allegation regarding how Degner

personally profited from the alleged misrepresentations.  In addition, a general desire to raise

capital does not, as a matter of law, raise a strong inference of scienter.  *See, e.g.*, *In re Baker*

*Hughes*, 136 F. Supp. 2d at 643; *Mortensen v. AmeriCredit Corp.*, 123 F. Supp. 2d 1018, 1024

(N.D. Tex. 2000); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Co.*,

75 F.3d 801, 813–14 (2d Cir. 1996).  Plaintiffs must allege a tangible, personal benefit.  *See In re*

*Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1178 (C.D. Cal. 2007).

The *Baker Hughes* plaintiffs also argued that the defendants were reckless by alleging

that they received regular financial reports and were involved in day-to-day operations at the

Company.  *In re Baker Hughes*, 136 F. Supp. 2d at 649.  This Court rejected this argument as

well, finding that these were "the type of generalized allegations routinely rejected as failing to

raise a strong inference of scienter."  *Id.*  Plaintiffs' allegations are similarly defective.  They

argue only that "GGS's officers received daily cash reports, which listed (among other things),

the previous day's bank balances, as well as cash inflows and outflows."  (Compl. ¶ 102.)  If

these arguments were accepted, "every corporate executive who participates in the day-to-day

management of his company would be exposed to liability for securities fraud."  *In re Baker*

*Hughes*, 136 F. Supp. 2d at 649 (quoting *In re Criimi Mae, Inc. Sec. Litig.*, 94 F. Supp. 2d 652,

661 (D. Md. 2000)).

The Fifth Circuit has also repeatedly held that, where a complaint alleges internal

controls were ineffective, Sarbanes-Oxley certifications are not alone sufficient to meet the

scienter requirement as to the persons making the certifications.  *See Shaw Grp.* 537 F.3d at 544–

45 (reversing denial of motion to dismiss claims based on misrepresentations of the effectiveness

of internal controls); *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.,* 497 F.3d 546, 554-55 (5th Cir. 2007) (affirming dismissal of similar claims).   As in *Central Laborers'*, Plaintiffs have made no allegation that, "on the particular date the certifications were made, the internal controls at [the Company] were inadequate" and their claims against Degner on this basis must be dismissed.  497 F.3d at 555.

This Court has been clear that vague allegations are not enough—"a plaintiff must plead specific facts constituting strong circumstantial evidence of conscious misbehavior or recklessness in order to raise a strong inference." *In re Baker Hughes*, 136 F. Supp. 2d at 640. Allegations based on conclusions that knowledge of fraud is the "only explanation" for certain events, "with no support," do not support a strong inference of scienter. *See Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*, 387 F. Supp. 2d 691, 708 (S.D. Tex. 2004) (Gilman, J.) (dismissing Section 10(b) claims for failure to allege scienter).   As in *In re Baker Hughes*, Plaintiffs allegations here do not raise a strong inference that Degner acted with scienter.

2.     Misrepresentations Made in Reliance on a Third Party—Here, GGS's Auditor—Cannot Serve as the Basis for a Section 10(b) Claim

Plaintiffs' scienter allegations fail for the additional reason that GGS and Degner relied on others at GGS and on its auditors in auditing the financial statements and evaluating the Company's internal controls.  GGS's auditor, UHY, conducted an audit of GGS's financials prior to the submission of the 2010 and 2011 Form 10-Ks.  In both instances, UHY found "the consolidated financial statements [for 2009, 2010, and 2011] present fairly, in all material respects, the consolidated financial position of Global Geophysical Services, Inc."  (Powers Decl. Ex. 1 at F-2; Ex. 2 at F-2.)  An executive defendant like Degner will not be liable under Section 10(b) where the misrepresentations were made in reliance on others at his Company or a third party. *See Pipefitters Local No. 636 Defined Ben. Plan v. Zale Corp.*, 499 Fed. App'x 345,

350 (5th Cir. 2012); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1239 (S.D. Cal. 2010);

*In re Cirrus Logic Sec. Litig.*, 946 F. Supp. 1446, 1465 (N.D. Cal. 1996).

**D.    Plaintiffs' Claim Based on Alleged Misstatements Regarding Capital Requirements Fails Because They Fall Within the Safe Harbor for Forward-Looking Statements and/or the Bespeaks Caution Doctrine**

To encourage more public disclosure of management's views for the future of its Company, the PSLRA provides a safe harbor for "forward-looking statements."  15 U.S.C. § 78u-5(c)(1)(A); *Southland Sec.*, 365 F.3d at 371–72.  This protection extends to statements regarding, among other things, projections of revenue, income, and capital expenditures, as well as "any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission."  15 U.S.C. § 78u-5(i)(1).

If the statement is "identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement," there is no liability unless the statement was made with actual knowledge of its falsity.  15 U.S.C. § 78u-5(c)(1)(A), (B); *Southland Sec.*, 365 F.3d at 371; *Lormand v. Unwired, Inc.,* 565 F.3d 228 (5th Cir. 2009).  Here, the purported misrepresentations regarding capital expenditures are protected forward-looking statements.  *Rubinstein v. Collins*, 20 F.3d 160, 166–68 (1994); *In re Browning-Ferris Indus. Inc. Sec. Litig.*, 876 F.Supp. 870, 878–79 (S.D. Tex. 1995).

GGS's Form 10-K for 2011 provides that "[w]e *believe* that our current working capital and projected cash flow from operations will be sufficient to meet our capital requirements for our existing operations for the next 12 months. Although we *expect* to continue generating positive cash flow from our operations."  (Am. Compl. ¶ 52; Powers Decl. Ex. 2 at 45 (emphasis added).)  These statements were directed at financial projections, and contained in Item 7 of the

10-K entitled, Management's Discussions and Analysis of Financial Condition and Results of Operations." (Powers Decl. Ex. 2 at 28.) The Form 10-K also contained the requisite language indicating that these were forward-looking statements, both in a section on page 2 entitled, "Forward-Looking Statements,"[4] as well as in the introduction to the Item 7.[5]

Plaintiffs' allegation that the misrepresentations do not warrant protection because there was no meaningful cautionary language is not correct. (*See* Am. Compl. ¶ 182.) The cautionary language was well beyond adequate: "events beyond our control may affect our financial condition or results of operations. These events include, but are not limited to, a significant drop in prices of oil and natural gas and a corresponding drop in demand for our services." (the lines from the Form 10-K have been omitted in the Amended Complaint). In addition, the 2012 Form 10-K was explicit that these financial statements could be affected by numerous uncertainties and risks that were listed in Item 7A. (Powers Decl. Ex. 2 at 46.) This is exactly the type of forward-looking projection encompassed by the safe harbor. *See, e.g.*, *Southland Sec.*, 365 F.3d at 371–72.

---

[4] The second page of the 2012 Form 10-K states: "The Business section and other parts of this Annual Report on Form 10-K ("Form 10-K") contain forward-looking statements that involve risks and uncertainties. Many of the forward-looking statements are located in "Management's Discussion and Analysis of Financial Condition and Results of Operations." Forward-looking statements provide current expectations of future events based on certain assumptions and include any statement that does not directly relate to any historical or current fact. Forward-looking statements can also be identified by words such as "anticipates," "believes," "estimates," "expects," "intends," "plans," "predicts," "projects," "forecasts," "may," "should," "probably" and similar terms. Forward-looking statements are not guarantees of future performance and our actual results may differ significantly from the results discussed in the forward-looking statements. Factors that might cause such differences include, but are not limited to, those discussed in the subsection entitled "Risk Factors" under Part I, Item 1.A of this Form 10-K, which are incorporated herein by reference. We assume no obligations to revise or update any forward-looking statements for any reason, except as required by law." (Powers Decl. Ex. 2 at 2.)

[5] The opening paragraph of Item 7 states: "The following discussion and analysis of our financial conditions and results of operations should be read in conjunction with the 'Selected Financial Information' section of this annual report and our consolidated financial statements and the related notes and other financial information included elsewhere in this annual report. In addition to historical financial information, the following discussion and analysis contains forward-looking statements that involve risks, uncertainties, and assumptions. Our actual results and timing of selected events may differ materially from those anticipated in these forward-looking statements as a result of many factors, including those discussed under 'Risk Factors' and elsewhere in this Form 10-K, which are incorporated herein by reference." (Powers Decl. Ex. 2 at 28.)

In addition, the cautionary language contained in the Form 10-K places the misrepresentation within the protection of the bespeaks caution doctrine.  The relevant filings in this case provided appropriate cautionary language for the predictive statements.  *See, e.g.*, *Rubinstein,* 20 F.3d at 167–68;  *In re Browning-Ferris*, 876 F. Supp. at 878–79.

**E.**   **Plaintiffs' Section 20(a) Claim Against Degner Fails Because There Is No Underlying Violation**

Plaintiffs' claim for control personal liability for statements made by GGS also fails. (Am. Compl. ¶¶ 209–215.)   For the reasons stated above, as well as the reasons given in the motion to dismiss filed by the remaining Individual Defendants, Plaintiffs have failed to state a claim against GGS under Section 10(b).   Without a valid underlying violation by GGS, Plaintiffs' claim against Degner as a control person fails as a matter of law.  *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1021 n.8 (5th Cir. 1996); *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509 (5th Cir. 1990).   In addition, for many of the alleged underlying violations, Degner was no longer CEO or at the Company; so he could not be a "control person" during those times.

## V.    CONCLUSION

Given this is Plaintiffs' third bite at the proverbial apple, and for the foregoing reasons, Defendant Richard A. Degner respectfully requests that the Court grant his motion to dismiss and dismiss all claims against him with prejudice.

19

Dated: February 27, 2015             BAKER & HOSTETLER LLP


By: *s/ Marc D. Powers*
     Marc D. Powers
     Jessie M. Gabriel
     45 Rockefeller Plaza, 14th Floor
     New York, NY 10111
     Telephone: (212) 589-4200
     Fax: (212) 589-4201
     mpowers@bakerlaw.com
     jgabriel@bakerlaw.com

         and

     Dean D. Hunt
     Marie L. Carlisle
     Baker & Hostetler LLP
     81 Main Street, Suite 1100
     Houston, TX 77002
     Telephone: (713) 751-1600
     Fax: (713) 751-1717
     dhunt@bakerlaw.com
     mcarlisle@bakerlaw.com

***Attorneys for Defendant Richard A. Degner***

20

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all parties on February 27, 2015 by causing it to be filed with the CM/ECF system.

*<u>s/ Marc D. Powers</u>*